

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS ESTES, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 5750 |
| | ) |
| v. | ) Judge Ronald A. Guzmán |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued the Illinois Department of Human Services ("DHS") for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* DHS has filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment. For the reasons set forth below, the motion is denied.

### Facts

Plaintiff was hired by DHS in March 2003 as a special assistant to DHS chief of staff Teyonda Wertz, the second highest-ranking official in the department. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 4; Estes Dep. at 12-13, 96.) Plaintiff's duties included driving Wertz to various DHS functions and meetings and completing any other tasks she assigned him. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 5.)

Shortly after he was hired, plaintiff says Wertz told him she wanted to have a romantic relationship with him. (Estes Dep. at 23-25.) Plaintiff declined. (*Id.*)

In March and April 2003, plaintiff says Wertz twice told him she needed him to be there for her and repeatedly referred to him as a "boy toy" or an "arm piece." (*Id.* at 34-41; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53.)

On May 6 and 7, 2003, Wertz, plaintiff and others went to Springfield on DHS business. (Pl.'s LR. 56.1(b)(3)(B) Stmt. ¶ 53.) There were not enough hotel rooms to accommodate all of the DHS employees, so plaintiff stayed in Wertz's room. (*Id.*) According to plaintiff, at some point during the evening of May 6, Wertz told him that she wanted him to make love to her. (*Id.*) Moreover, plaintiff says, when he refused, Wertz said "You'll make love to me or you'll lose your job." (*Id.*)

On May 30, 2003, plaintiff received a discharge notice from DHS that Wertz had signed on behalf of DHS Secretary Carol Adams. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.) DHS says plaintiff was discharged because he used a state-owned car for personal business. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 44-47.) Plaintiff says he was discharged because he refused to submit to Wertz's sexual advances. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 4-5.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls*

*of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I of the amended complaint, plaintiff asserts a claim of sexual harassment.

> Sexual harassment is the form of sex discrimination . . . that consists of efforts either by coworkers or supervisors to make the workplace intolerable or at least severely and discriminatorily uncongenial . . . ("hostile work environment" harassment), and also efforts (normally by supervisors) to extract sexual favors by threats or promises ("quid pro quo" harassment).

*DeClue v. Cent. Ill. Light Co.*, 223 F.3d 434, 437 (7th Cir. 2000); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (stating that the terms quid pro quo and hostile environment are still useful, when the question is whether plaintiff has made a *prima facie* case, to distinguish between claims in which plaintiff suffers an adverse employment action because he refuses to submit to his supervisor's sexual demands and those in which no tangible action is taken). A *prima facie* case of so-called quid pro quo harassment requires evidence that plaintiff was subjected to unwelcome sexual advances, the harassment was based on his sex, plaintiff's refusal to submit to the advances led to an adverse employment action and *respondeat superior* liability has been established. *See Bryson v. Chi. State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996).

Plaintiff contends that he has created a genuine issue of fact as to whether he was subjected to quid pro quo harassment. The Court agrees. Viewed favorably to plaintiff, the record contains the following facts: (1) Wertz hired plaintiff as her assistant in March 2003 (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 4); (2) in March 2003, shortly after Wertz hired plaintiff, she told him that she wanted to have a romantic relationship with him – an offer he declined (Estes Dep. at 23-25); (3) in April 2003 Wertz twice told plaintiff, "I need you to be there for me" (*id.* at 34-41); (4) on May 6, 2003, while on a business trip to Springfield, the two shared a hotel room and Wertz asked plaintiff to make love

3

to her. When he refused, she told him he would make love to her or lose his job (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53); (5) three weeks later, Wertz told plaintiff she was going to tell Secretary Adams to fire him (Estes Dep. at 130-31); (6) on May 30, 2003, plaintiff received a termination letter signed by Wertz on behalf of the Secretary (*id.* at 133). Those facts are sufficient to make a *prima facie* case of quid pro quo harassment. *See Ellerth*, 524 U.S. at 762 (1998) ("[A] tangible employment action taken by [a] supervisor becomes for Title VII purposes the act of the employer."); *Bryson*, 96 F.3d at 915 (setting forth elements of quid pro quo claim).

Plaintiff has also made a *prima facie* case of hostile environment harassment. Such a claim requires proof that: (1) plaintiff was subjected to unwelcome sexual advances; (2) the conduct was severe or pervasive enough to create a work environment that was objectively and subjectively hostile; (3) the conduct was directed at him because of his sex; and (4) DHS failed to take reasonable care to prevent and correct the harassment and plaintiff took advantage of any preventive or corrective measures DHS provided. *See Ellerth*, 524 U.S. at 753-54, 765 (setting forth standard for holding employer liable for harassment that precedes a tangible employment action); *Quantock v. Shared Marketing Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002) (setting forth elements of hostile work environment harassment claims).

With respect to this claim, the record shows that: (1) over a three-month period, Wertz made two overt sexual advances to plaintiff and commented on several occasions that he was a "boy toy" or a good "arm piece" (Estes Dep. at 23-25, 34-41; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53); (2) Wertz was plaintiff's immediate supervisor and the second-highest ranking employee of DHS (Estes Dep. at 12-13, 96); (3) plaintiff had extensive, daily contact with Wertz (*id.* at 13); (3) Wertz's sexual conduct made the performance of plaintiff's job duties more difficult, caused him to suffer from anxiety,

4

headaches and to lose weight (*id.* at 124-28, 229-37); (4) plaintiff never received a copy of the DHS handbook that contained the agency's anti-harassment policy and the agency did not apprise him of the policy in any other way (*id.* at 117-23); (5) the day after Wertz propositioned plaintiff in Springfield, he told Secretary Adams' assistant what had happened and said he wanted to speak to Adams about it. The assistant told plaintiff not to tell Adams because, given her thirty-year friendship with Wertz, any such conversation would backfire on plaintiff (*id.* at 93-95). Those facts are sufficient to defeat defendant's motion on the hostile environment claim. *See Quantock*, 312 F.3d at 904-05 (stating that a fact issue existed on whether plaintiff was subjected to hostile environment harassment given evidence that male supervisor solicited plaintiff for sex three times during the course of one meeting, the supervisor had a "significant position of authority at the company," the two worked closely together, and plaintiff reported the conduct to another supervisor, and sought psychological treatment as a result of her supervisor's actions).

In the second count of his amended complaint, plaintiff asserts a Title VII retaliation claim. Plaintiff can defeat defendant's motion on this claim by presenting direct or circumstantial evidence of retaliatory intent or by using the burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005). The direct method requires plaintiff to offer proof that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). DHS says plaintiff cannot satisfy the first element because rejecting sexual advances, the protected activity plaintiff identifies, does not fall within the ambit of the statute.

Title VII does not identify the kinds of activity it protects. It simply says that an employer cannot discriminate against an employee "because he has opposed any practice made . . . unlawful" by the statute. 42 U.S.C. § 2000e-3(a). The Seventh Circuit has not yet decided whether refusing sexual advances constitutes protected activity. *See Murray v. Chi. Transit Auth.*, 252 F.3d 880, 890 (7th Cir. 2001) (expressly declining to reach the issue). Nor, as far as we can tell, has any other circuit court of appeals.

Moreover, the district court decisions are split. Because sexual harassment is one of the practices that Title VII makes unlawful, some courts have held that refusing advances is protected activity. *See, e.g., Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 385-86 (S.D.N.Y. 2002); *Black v. City & County of Honolulu*, 112 F. Supp. 2d 1041, 1049 (D. Haw. 2000); *Laurin v. Pokoik*, No. 02 Civ. 1938 (LMM), 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005); *Roberts v. County of Cook*, No. 01 C 9373, 2004 WL 1088230, at *5 (N.D. Ill. May 12, 2004). However, other courts, reasoning that quid pro quo and retaliation claims would merge if protected activity includes resisting advances, have held that it does not. *See Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 748-49 (D. Md. 2003); *Fitzgerald v. Henderson*, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), *rev'd in part on other grounds*, 251 F.3d 345 (2d Cir. 2001); *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996); *Farfaras v. Citizens Bank & Trust of Chi.*, No. 01 C 8720, 2004 WL 2034077, at *2 (N.D. Ill. Aug. 30, 2004); *Jones v. County of Cook*, No. 01 C 9876, 2002 WL 1611606, at *4 (N.D. Ill. July 17, 2002).

Though the result might be different in another case, in the context of this case, the Court holds that plaintiff's refusals of Wertz's advances constitute protected activity. Viewed favorably to him, the record shows that DHS made no effort to apprise plaintiff of its sexual harassment policy;

the alleged harasser is plaintiff's immediate supervisor, second-in-command at DHS and a decades-long friend of the head of DHS; and, when plaintiff complained to Adams' assistant about the harassment, he was told not to tell Adams because any report to her would backfire on plaintiff. (Estes Dep. at 12-13, 93-96, 117-23.) Given the circumstances, refusing Wertz's advances "was one of very few options that [plaintiff] had for opposing sexual harassment." *Laurin*, 2005 WL 911429 at *4 (holding that plaintiff's rejections of defendant's advances were protected activity because the firm for which the parties worked, and of which defendant was a principal, had no formal harassment policies or mechanisms for reporting harassment, and the only people to whom plaintiff could have complained were defendant's business partner and lawyer). In short, the Court holds that plaintiff has satisfied the first element of the *prima facie* case.[1]

Even if that is true, DHS contends that plaintiff's claim is still deficient because there is no evidence to suggest that his discharge is causally connected to his rejections of Wertz's alleged advances. Because plaintiff was discharged by Adams, and Adams did not know about the alleged harassment, DHS says the causal connection is missing.

DHS' argument is premised on the notion that the decision to discharge plaintiff was Adams' alone. Viewed favorably to plaintiff, however, the record supports the inference that the discharge decision was actually made by Wertz and rubber-stamped by Adams. Specifically, the record shows that Wertz had the authority to discharge plaintiff; Wertz and Adams were life-long friends; a few weeks after the incident in Springfield, Wertz told Adams that plaintiff should be fired for using his state-owned car for personal business; other DHS employees, including Wertz, have used their state-

---

[1] Plaintiff also argues that he engaged in protected activity when he reported Wertz's harassment to Secretary Adams' assistant. Given our determination that his rejection of Wertz's advances was protected activity, we need not address this contention.

7

owned cars for personal business but kept their jobs; and Wertz signed plaintiff's discharge letter on Adams' behalf. (Estes Dep. at 130-31; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 4-6, 22, 36-39, 41.) Taken together, those facts are sufficient to satisfy the last element of the *prima facie* case of plaintiff's retaliation claim. Therefore, defendant's motion for summary judgment on this claim is denied.[2]

## Conclusion

For all of the reasons stated above, defendant's motion for summary judgment [doc. no. 51] is denied.

SO ORDERED.　　　　　　　　　　　ENTERED: 2/16/07

　　　　　　　　　　　　　　　　　　　　　　HON. RONALD A. GUZMAN
　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

---

[2]Because we have determined that plaintiff has made a *prima facie* case of retaliation under the direct method, we need not discuss the burden-shifting method.